[783 NYS2d 375]

In the Matter of WILLIAM J. LAZARONI (Admitted as WILLIAM JOSEPH LAZARONY), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, October 28, 2004

## APPEARANCES OF COUNSEL

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Jorge Dopico* of counsel), for petitioner.

No appearance for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent was admitted to the practice of law in New York by the Third Judicial Department on January 27, 1987, under the name William Joseph Lazarony. At all times relevant to these proceedings, he has maintained an office for the practice of law within the First Judicial Department.

The Departmental Disciplinary Committee has moved, pursuant to 22 NYCRR 603.4 (e) (1) (i) and (iii) and Judiciary Law § 468-a, for an order immediately suspending respondent from the practice of law based upon his willful failure to cooperate with the Committee in its investigation of allegations of professional misconduct, and based on uncontested evidence of professional misconduct that presents an immediate threat to the public interest. Specifically, the Committee presents evidence that respondent has failed to submit answers to 15 complaints filed against him and his firm; that he has failed to comply with other lawful demands of the Committee in its investigation into those and other complaints; that he has failed to appear before the Committee to give testimony and produce escrow records and client files, despite having received three notices pursuant to a subpoena; that he has abandoned his law practice without providing a genuine office address to his clients or the Committee; and that he has failed to maintain intact approximately $80,000 of client funds. In addition, respondent has failed to register as an attorney with the Office of Court Administration and is delinquent in the payment of his biennial registration fees.

On January 15, 2003, the Committee received a complaint from Mary Grace Frohman alleging respondent had not responded to many of her communications since October 2001 regarding $13,000 in no-fault benefits she believed was still owed to her after the settlement of her claim. On March 3, 2003, the Committee sent respondent a copy of this complaint, and requested that he answer within 20 days.

On January 22, 2003, the Committee received a complaint from Edward Murdock, on behalf of his brother, alleging respondent refused to turn over his brother's portion of $75,000 paid in settlement of a case arising from an automobile accident. A copy of the Murdock complaint was sent to respondent on February 7, 2003. On February 27, 2003, respondent submitted

an answer stating that his firm could not release the settlement funds at issue unless Murdock became his brother's court-appointed guardian.

On February 20, 2003, the Committee received a third complaint against respondent from Pamela L. Dersovitz on behalf of RD Legal Funding alleging that respondent had "sold" the company legal fees that he did not earn. On March 14, 2003, the Committee sent respondent a copy of this complaint seeking an answer within 20 days.

After receiving no responses to the Frohman and Dersovitz complaints, on April 10, 2003, the Committee again wrote to respondent, demanding answers and asking him to call the Committee to schedule his deposition. The Committee also directed him to provide his escrow and bank records from the relevant time period, and warned that a failure to cooperate could expose him to formal charges or suspension. On April 30, 2003, the Committee sent the same letter to a new business address that they had obtained.

On May 13, 2003, this Court issued a subpoena duces tecum directing respondent to testify on May 28, 2003 and to bring his files for these three clients and the previously requested escrow and bank records. Prior to the deposition date respondent's counsel requested an adjournment. On May 30, 2003, the Committee sent a letter to counsel, directing respondent to answer the Frohman and Dersovitz complaints and to bring his escrow records to his deposition on June 9, 2003.

On June 9, 2003 respondent appeared with counsel for his deposition, but he brought neither the answers nor the escrow records the Committee had requested. Respondent testified that his landlord had locked him out when he left his office before his lease expired. Respondent testified that although his firm was named Gasior & Lazaroni, he was the partner responsible and Gasior was his former spouse who was now raising their family. He said that the law practice had suffered because of their divorce. At the end of the deposition the Committee directed respondent to answer, by June 27, 2003, the Frohman and Dersovitz complaints, as well as a new complaint filed by Frances Balzano, and to obtain his records from his landlord.

In June 2003, the Committee sent respondent's counsel letters regarding the Balzano complaint and another new complaint filed by Angela Mastrocinque, both of whom alleged neglect of their personal injury matters and inability to communicate with respondent. The Committee also sent a letter to

counsel demanding answers to two more client complaints, also alleging neglect and failure to communicate, which the Committee had received and mailed to respondent. On June 30, 2003, counsel left a message with the Committee that he had written respondent asking him to cooperate with the Committee and would call again with a timetable to submit answers and escrow records.

On September 11, 2003, this Court subpoenaed respondent's IOLA records from his bank. On or about November 5, 2003, respondent was given access to his office but was unable to find the Frohman and Dersovitz files that the Committee had directed him to return to the clients immediately. On November 20, 2003, the Committee reminded respondent's counsel that respondent had not answered the complaints or provided his records, that Frohman and Dersovitz were frustrated because their files had not been returned, and that respondent's failure to cooperate might draw a motion. On November 21, 2003, respondent's counsel withdrew as respondent's attorney.

On December 9, 2003, the Committee wrote respondent concerning nine pending complaints that he had yet to answer, and told respondent that he was required to appear for a deposition on December 19, 2003 with all answers and records. One complainant, Tomas Pacheco, had alleged that a $29,966.67 settlement check drawn on respondent's IOLA account had been dishonored because of an irregular signature. Another complainant, Pernell Dingle, alleged that respondent's firm had not given him his portion of a $5,000 settlement paid by the Transit Authority. The Committee subsequently obtained a copy of a Transit Authority check issued to respondent's firm and Dingle, which had been deposited into respondent's escrow account.

On December 10, 2003, a Committee investigator went to the address respondent had provided at his June 2003 deposition and discovered that it was only a mail drop, not an office.

When respondent failed to appear for his deposition on December 19, 2003, he faxed a letter claiming that he was "broke," that he was caring for his ill mother, and that he was having problems receiving mail. The fax included answers to the Frohman and Dersovitz complaints, and a request for a list of the other complaints so that respondent could answer them. In response, the Committee wrote respondent on December 23, 2003, listing the pending complaints, again requesting his escrow records and his contact information, and directing him to appear for a deposition on January 8, 2004. Respondent did

not appear before the Committee on January 8, 2004. The next day (January 9, 2004), the Committee received a fax from respondent, in which he claimed that he was being hospitalized for a back ailment that might require surgery, and requested that his deposition date be rescheduled. The fax of January 9, 2004 is the last communication from respondent that the Committee has received.

On April 15, 2004, a Committee investigator discovered that respondent was residing in Albany, New York. The person who answered the phone at respondent's Albany residence said that mail could be sent to respondent at a post office box under his mother's name in Averill Park, New York.

On April 16, 2004, the Committee sent a letter to respondent, both by fax and by certified mail, directing respondent to appear for deposition on April 23, 2004, and warning that his failure to appear would be likely to result in his suspension from the bar. The certified mail receipt for the letter was signed by respondent's mother. Respondent did not appear on April 23, 2004; again, he has not contacted the Committee since January 9, 2004.

In addition, respondent has failed to answer an additional seven complaints that the Committee received and sent to him from February to June 2004. On June 4, 2004, the Committee wrote respondent concerning two complaints, and enclosed a copy of his bank statements which reflected a balance in early 2003 well below the amount he was obligated to maintain for his clients. The Committee asked respondent to explain why so little money was left when he had failed to send three clients their settlement funds. In fact, the bank records reveal that respondent had maintained substantial funds, often over five or six figures, until early 2003, when the balance dropped to a few thousand dollars. On July 31, 2003, the escrow balance was $102.50. The Committee also advised respondent in the June 4, 2004 letter that, if he did not immediately and fully cooperate, they would move for his suspension.

The Committee now maintains that respondent should be suspended on an interim basis pursuant to 22 NYCRR 603.4 (e) (1) (i) and (iii) because, notwithstanding repeated requests, respondent to date has failed to answer numerous complaints, has failed to appear for three scheduled depositions, has failed to produce client files and escrow records lawfully demanded by the Committee, and has failed to provide a genuine office address. In addition, the Committee avers that there is uncontested

evidence of respondent's professional misconduct, inasmuch as he has abandoned his law practice and, according to his bank and escrow records, has failed to maintain intact approximately $80,000 in settlement funds obtained on behalf of three clients (*see Matter of Wertis*, 307 AD2d 15 [2003]). Furthermore, respondent has failed to register or pay his registration fees for the 2003-2004 biennial period. Although this motion has been served on respondent by certified mail, respondent has not submitted any response.

We find that respondent's failure to fully cooperate with the Committee's investigation into 18 disciplinary complaints filed against him has been established. Respondent has failed to answer 15 complaints; he has failed to produce requested client files and IOLA account records; and he has failed to appear for three scheduled depositions. Respondent appears to have abandoned his law practice, and has done so without leaving the Committee or his clients a new address at which he may be found. This constitutes "serious misconduct that demands an immediate response in defense of the public interest" (*see Matter of Wertis*, 307 AD2d at 18-19; *see also Matter of Butler*, 241 AD2d 263 [1998]).

Accordingly, the Committee's motion for an order immediately suspending respondent from the practice of law until such time as disciplinary proceedings have been concluded and until further order of this Court should be granted.

MAZZARELLI, J.P., ANDRIAS, SAXE, FRIEDMAN and CATTERSON, JJ., concur.

Respondent suspended from the practice of law in the State of New York, effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded and until further order of this Court.